IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-D-2474 (PAC)
_____

CHARLOTTE SCHNEIDER AND DEAN WYMER,

      Plaintiffs,

v.

LANDVEST CORPORATION, a Kansas corporation,
and DAVID MASON, individually,

      Defendants.
_____

**DEFENDANTS' SUPPLEMENTAL PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW RE: SOCIAL SECURITY DISABILITY BENEFITS,
SUBMITTED NOVEMBER 11, 2005**
_____

**SUPPLEMENTAL FINDINGS OF FACT**

**H.   Plaintiff Schneider's Receipt of Social Security Disability Benefits and Her Representations to the Social Security Administration**

145.   Plaintiff Schneider has been receiving Social Security disability benefits since she was 18 years of age and was receiving benefits while she worked for Landvest. [Trial Transcript, 228:12-14; 20:20-24.]

146.   At the time of trial, Plaintiff Schneider was aware that she risked jeopardizing her qualification for benefits if she earned more than $800 per month. [Def. Ex. A0017-0001; Trial Transcript, 228:15-18.]

147.   Plaintiff Schneider also admitted that she understood the Social Security term "substantial gainful activity." [Trial Transcript, 228:19-21.]

148.   Plaintiff Schneider admitted that she represented to the Social Security Administration (SSA) that she was earning an amount less than substantial gainful activity. [Trial Transcript, 228:22-

229:4.]

149.    Plaintiff Schneider also admitted that she requested David Mason to split her pay unevenly between her and Wymer so that she could receive, continue to receive her Social Security benefits without going over that limit of substantial gainful activity. [Trial Transcript, 229:19-230:8.]

150.    Schneider testified as follows:

**Question:** And are you familiar with the Social Security term "substantial gainful activity"?

**Schneider:** Yes, I am.

**Question:** And have you represented to the Social Security Administration that you are not able to engage in substantial gainful activity?

**Schneider:** What I have reported to them is I filled out their papers and put in the amount that I was earning.

**Question:** Which is an amount less than substantial gainful activity, correct?

**Schneider:** At times, yes.

. . .

**Question:** And your purpose in asking this was so that you could receive, continue to receive, your Social Security benefits without going over that limit of substantial gainful activity?

**Schneider:** Without losing my insurance

**Question:** And your purpose in asking this was so that you could receive, continue to receive, your Social Security benefits without going over that limit of substantial gainful activity?

**Schneider:** Without losing my insurance.

**Question:** Okay. So you could still get the benefits.

**Schneider:** Yes.

[Trial Transcript 228:19-4; 230:3-8.]

150.    Plaintiff clearly was claiming she worked overtime to the court while indicating she could not engage in such substantial work to the SSA.

**SUPPLEMENTAL CONCLUSIONS OF LAW**

I.  **FAIR LABOR STANDARDS ACT UNPAID WAGES CLAIM**

   A.  **A legal overview of the Administration's criteria for determining whether an applicant is "disabled" and when to discontinue benefits for engaging in "substantial gainful activity."**

According to applicable case law and regulations, a disabled person must apply to the SSA for a determination of disability. 42 U.S.C. § 432(a)(1)(D). This determination is made based on medical, personal and work reports. Id. § 432(d)(5)(A); 20 C.F.R. § 404.1512. For social security purposes, one is "disabled" if she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. § 423(d).

One goal of the social security program is to encourage disabled workers to be productive and attempt to re-enter the workforce. SSA Publication No. 05-10095 (January 2005) (available at www.socialsecurity.gov/disability). This SSA publication describes one's entitlement to disability benefits and is routinely provided by the SSA to disabled persons. See, e.g., Form SSA-821-BK (March 2001) (which is standard form used by the SSA which requires enclosure of Publication 05-10095). With this goal, the social security program permits a "trial work period." Id. § 422(c). The trial work period is a period during which a disabled person tests her ability to work without jeopardizing disability benefits. 20 C.F.R. § 404.1592(a). Every disabled social security recipient is entitled to one trial work period while disabled. Id. § 404.1592(c). The trial work period begins with the month a person first becomes entitled to disability benefits and generally ends after the ninth month in which the person performed "services" within a rolling period of five years. Id. § 404.1592(e). The nine months of "services" do not have to be consecutive, but may occur at any time during the five-year measuring period. Id. § 404.1592(a). A recipient is generally considered by the SSA to have performed "services" in any month in which the recipient's earnings exceed a specified monthly limit,

which is adjusted from time to time ($530 in 2001, $580 in 2004, $590 in 2005, $620 in 2006). Id. § 404.1592(b). In essence, the trial work period allows a person receiving disability benefits to work and earn income at any level but still receive full disability benefits. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a).

After a trial work period ends, a "reentitlement period" begins. The reentitlement period begins immediately after the trial work period ends and lasts for three years. Id. § 404.1592a(b). A reentitlement period is yet another period of time during which a disability recipient may test her ability to work. Id. § 404.1592a(a). During the reentitlement period, a disability recipient may continue to work, but if the work constitutes "substantial gainful activity," the SSA considers the person's disability to have ceased and does not pay disability benefits during any month of substantial gainful activity. Id. § 404.1592a(a)(2). If a recipient's benefits stop because of substantial gainful activity, the reentitlement period allows benefits to restart without further application or a new determination of disability, once the recipient ends substantial gainful employment. Id. The reentitlement period essentially allows a disabled person to work off and on and start and stop benefits depending on the earnings of the person for any month in the reentitlement period.

"Substantial gainful activity" is work during any period in which a benefit recipient considers herself disabled which tends to show that she could work at a gainful level. Id. § 404.1571. Based on this definition, the SSA uses several factors to determine if work meets the substantial gainful activity level. One of the most common factors is the amount of a disability recipient's earnings. If the earnings exceed a certain level, the SSA will generally consider the recipient capable of substantial gainful activity. If a disability insurance recipient does not have earnings in excess of the substantial threshold, the SSA will consider the recipient to have not engaged in substantial gainful activity and only in special circumstances, such as a person deferring or suppressing earnings, will the SSA consider the other factors. Id. § 404.1574(b)(6)(ii). The following table sets forth the minimum earnings level the SSA uses to determine if a recipient engages in substantial gainful activity.

| For Months in Calendar Years: | Monthly Earnings Averaged More Than: |
|---|---|
| 2006 | $860 |
| 2005 | $830 |
| 2004 | $810 |
| 2003 | $800 |
| 2002 | $780 |
| 2001 | $740 |

After the three-year reentitlement period, a disability recipient's benefits completely terminate if the recipient engages in substantial gainful employment. Id. § 404.1592a(a)(3). Thereafter, the recipient must be re-determined by the SSA as disabled. Nonetheless, after a recipient's benefits cease because her earnings are substantial, the recipient has five years during which she can request that the SSA restart her benefits without a new application if the participant is unable to continue to work because of her condition (referred to as the expedited review period).

    **B.**  **Plaintiff Schneider testified that she represented to the Social Security Administration that she is not able to engage in substantial gainful employment.**

Notwithstanding this regulatory background, the judicial estoppel determination is clear. A recipient of Social Security benefits jeopardizes her Social Security benefits if she report that she was engaged in substantial gainful employment. This is crucial to a recipient because such activity triggers a trial work period and a subsequent three-year reentitlement period that, once exhausted, a person's benefits completely terminate. *See* 20 C.F.R. § 404.1592a(a)(3). Thereafter, the recipient must be re-determined by the SSA as disabled. *Id.* Schneider has been receiving Social Security benefits since she was 18 years of age and appreciates the significance of the impact her work activity and earnings

has on her disability benefits. [Trial Transcript 228:12-14; *See* Trial Ex. A0017-001 (Schneider requesting to divide her pay unevenly to ensure she was not "dropped" from Social Security.).] Schneider also understands the meaning and significance of "substantial gainful activity" as it is used by the SSA. [Trial Transcript 228:19-21.] Although a review of Schneider's Social Security records would have been helpful in determining what she represented to the SSA, Schneider short-circuited this exercise and admitted at trial that she represented to the SSA that she was not able to engage in substantial gainful activity. [Trial Transcript 228:22-229:4.] Plaintiffs' understanding of the meaning of "substantial gainful activity," coupled with her admission that she represented that she was not able to engage in such activity, is an admission that what she was representing to the SSA is contradictory to her claim in this lawsuit that she frequently worked over 40 hours in a workweek.

### C. **Plaintiff Schneider deliberately changed her claim of number of hours worked and should be judicially estopped from recovery.**

Judicial estoppel is a discretionary remedy courts may invoke "to prevent improper use of judicial machinery." *Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1068 (10th Cir. 2005) (citing *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S. Ct. 1808 (2001)). It prevents parties from "deliberately changing positions according to the exigencies of the moment." *New Hampshire,* 532 U.S. at 750. The doctrine is stated as follows: "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Johnson,* 405 F.3d at 1069 (citing *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S. Ct. 555 (1895)).

"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire,* 532 U.S, at 750. Nevertheless, *New Hampshire* noted three factors courts should consider when determining whether to employ judicial estoppel:

    i. A party's later position must be clearly inconsistent with its earlier position;

    ii. Courts should consider whether the party persuaded a court to accept its earlier position, leading to "the perception that either the first or the second court was mislead"; and

    iii. Courts should consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750-51 (referring to this judicial inquiry as "balancing the equities").

    1. <u>Ms. Schneider's representation to the SSDI of total disability is clearly inconsistent with the position she takes in this lawsuit.</u>

For SSDI purposes, Ms. Schneider admitted that she represented to the SSA that she was not able to engage in substantial gainful activity. [Trial Transcript 228:19-229:4.]  Simultaneously, Ms. Schneider claims that she not only engaged in substantial gainful work, but did so at a pace in excess of forty hours per week.  Ms. Schneider's previous position to the SSDI is "clearly inconsistent" with her contentions in the present case.

In *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795 (1999), the U.S. Supreme Court addressed the meaning of "inconsistent" in the context of an ADA claim.  In the ADA context, a plaintiff must prove as an element of her *prima facie* case that she is a person "who, with or without reasonable accommodation, can perform the essential functions" of her job."  Hence, a claim of total disability for SSDI purposes is at least partly inconsistent with the plaintiff's claim for ADA purposes that she can perform the essential functions of her job.[1]  "When faced with a plaintiff's previous sworn

---

[1] It is "partly inconsistent" because courts take reasonable accommodations into account for the ADA inquiry, while the Social Security Administration does not take reasonable accommodations into account in the SSDI inquiry.

statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of the ADA claim" before denying summary judgment. *Id.*

Ms. Schneider does not bring an ADA claim. To establish a *prima facie* case of FLSA unpaid wages, Ms. Schneider must prove she performed work in excess of forty hours per week. *See Murray v. Stuckey's, Inc.,* 939 F.2d 614, 621 (8th Cir. 1991) (a plaintiff must prove defendant had constructive or actual knowledge of *overtime worked* or unpaid wages). Ms. Schneider claims she worked as such and hence satisfies this element. However, she testified that she represented to the SSA that she was earning an amount less than substantial gainful activity - i.e less than forty hours per week. Schneider's representation to the SSDI that she can engage in no "substantial gainful work which exists in the national economy" is inconsistent with her contention that she worked over forty hours per week for Landvest *without any accommodation* for her total disability.

"[A] person who applied for disability benefits must live with the factual representations made to obtain them." *Opsteen v. Keller Structures, Inc.,* 408 F.3d 390, 392 (7th Cir. 2005). *Opsteen* goes further:

> Opsteen wants to have things two ways, depicting himself as mentally incompetent in order to obtain disability benefits but as mentally capable in order to secure employment. He has not informed the Social Security Administration of his new position, nor has he asked the SSA and the ERISA plan to stop paying benefits. Instead he seeks to maintain both gloomy and optimistic medical evaluations at the same time, and to benefit from different sources based on these incompatible positions. *Cleveland* holds that courts need not tolerate this maneuver. Litigants who take one view of the facts, and prevail, are equitably estopped to assert the opposite later.

*Id.* at 392 (internal citations omitted).

Ms. Schneider's representation for SSDI purposes of total disability is clearly inconsistent with her contentions in this lawsuit that she worked over forty hours per week at Landvest without any accommodation for her total disability. Ms. Schneider cannot have both things both ways – she cannot receive SSDI benefits by claiming a total disability and later receive a judgment from this Court that stacks overtime pay on top of her SSDI disability benefits.

      2.    <u>If Ms. Schneider prevails, either the SSDI or this Court will have been mislead.</u>

Like Opsteen, Ms. Schneider "wants to have things two ways." *Opsteen,* 408 F.3d at 392. She depicted herself as unable to engage in any "substantial gainful work which exists in the national economy" to obtain SSDI benefits. For purposes of this lawsuit, she contends she not only engaged in substantial gainful work while obtaining the SSDI benefits, but did so at a frequency exceeding forty hours per week.

In the ADA context and in light of the requirement of reasonable accommodation, "[a] declaration of disability in an SSDI benefits application is thus not always equivalent to a factual statement that the applicant cannot perform the essential functions of [her] job." *Kiely v. Heartland Rehab. Services,* 359 F.3d 386, 389 (6th Cir. 2004). However, Ms. Schneider never requested an accommodation from Landvest, and Landvest did not otherwise accommodate her. Ms. Schneider's representation to the SSDI is an admission that she cannot perform an substantial gainful work without an accommodation. Ms. Schneider received no accommodation. Ms. Schneider has already mislead the SSDI. The U.S. Supreme Court has ruled "courts need not tolerate this maneuver. Litigants who take one view of the facts, and prevail, are equitably estopped to assert the opposite later." *Opsteen,* 408 F.3d at 392.

      3.    <u>The third *New Hampshire* consideration - detriment to Landvest is not satisfied.</u>

The third *New Hampshire* element suggests courts should consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire,* 532 U.S. at 751. This element does not favor Landvest – Landvest was not itself tangibly damaged when the SSDI distributed disability benefits to Ms. Schneider.

However, the *New Hampshire* considerations are not akin to elements of a *prima facie* case that must be satisfied in order to proceed under a legal theory. Rather, the Supreme Court described the *New Hampshire* factors as considerations that should enter into a court's determination of whether

to apply judicial estoppel: "In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint." *New Hampshire,* 532 U.S. at 751. Ms. Schneider either willfully mislead the SSDI to wrongfully obtain benefits for her alleged total disability or she is misleading this court as to how much work she is capable of doing. "*Cleveland* holds that courts need not tolerate this maneuver." *Opsteen,* 408 F.3d at 392. Landvest clearly satisfies two elements of the *New Hampshire* inquiry. The "balance of equities" in this lawsuit tips in favor of Landvest, and Ms. Schneider's claim for unpaid wages should be denied.

Entered this _____ day of _____, 2005.

By _____
Wiley Y. Daniel, United States District Court Judge

Respectfully submitted this 7th day of November, 2005.

                    KUTAK ROCK LLP

By: **s/ Stacia G. Boden          11/07/2005**
     Alan L. Rupe,  KS Bar # 08914
     Stacia G. Boden,   KS Bar # 20295
     8301 East 21st Street North, Suite 370
     Wichita, Kansas  67206-2295
     Telephone: (316) 609-7900
     Facsimile:  (316) 630-8021

     Heather Davis, CO Bar #30056
     Mark C. Willis, CO Bar #31025
     1801 California Street, Suite 3100
     Denver, Colorado  80202
     Telephone: (303) 297-2400
     Facsimile:  (303) 292-7799
     ATTORNEYS FOR DEFENDANTS