# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 03-D-2474 (PAC)

CHARLOTTE SCHNEIDER AND DEAN WYMER,

    Plaintiffs,

v.

LANDVEST CORPORATION, a Kansas corporation,
and DAVID MASON, individually,

    Defendants.

## DEFENDANTS' SUPPLEMENTAL BRIEF ON
## CALCULATION OF DAMAGES AND LIQUIDATED DAMAGES

Defendants Landvest Corporation ("Landvest") and David Mason ("Mason"), by and through their attorneys, Kutak Rock LLP, hereby submit the following Supplemental Brief on Calculation of Damages and Liquidated Damages. In support of their brief, Defendants state as follows:

### DETERMINATION OF REGULAR RATE

**A.  Plaintiffs Were Employed Under a Fixed Workweek Salary Pay Plan Whereby Plaintiffs Were Compensated for 35 Hours of Work Per Week at a Regular Rate of $5.93 an Hour**

This case involves a fixed workweek salary pay plan pursuant to 29 C.F.R. 778.113. There is no dispute that Plaintiffs Schneider and Wymer were compensated under this pay plan.

[Trial Transcript, 807:14-20; 907:18-908:22.][1]  This pay plan is pursuant to federal regulation interpreting the Fair Labor Standards Act.  29 C.F.R. 778.113(a).

The language of the contract is clear that Schneider and Wymer were hired at a salary wage for a regular workweek of no more than a combined total of 70 hours, or, 35 hours each.  The language of the contract provides the same scenario as provided by the interpreting regulation, which provides:

> If the employee is hired at a salary of $182.70 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $182.70 divided by 35 hours, or $5.22 an hour, and when he works overtime he is entitled to receive $5.22 for each of the first 40 hours and $7.83 (one and one-half times $5.22) for each hour thereafter.

29 C.F.R. 778.113(a).

Applying this formula to Schneider and Wymer's employment, Plaintiffs contracted with Landvest for an annual combined salary of $21,600 or $10,800 each (exclusive of bonuses, lodging and benefits).  Pursuant to their employment agreement, Schneider and Wymer agreed to work approximately 44 hours per week but in no event, "no more than a combined total of 70 hours per week".  They could be called upon to work additional hours as needed and agreed to be available during the scheduled office hours.

Thus, based on the plain language of the contract, as of January 20, 2003, Schneider and Wymer were each earning a salary of $10,800 per year (or $207.69 per week) as a salary wage for a regular workweek of 35 hours.  Accordingly, the regular rate of pay is $5.93 an hour ($207.69 divided by 35 hours).  When either Schneider or Wymer worked between 35 to 40 hours in a workweek, they were each entitled to their salary wage plus $5.93 an hour for hours

---

[1] At trial, Plaintiffs' counsel also agreed the appropriate analysis was a fixed workweek salary pay plan.  Ms. Dell'Olio stated, "I agree with your comments yesterday that 778.113 applies, that there are two regulations on salary and the difference between them is how you calculate the hourly rate.  And you mentioned that you thought 113 applied.  I think you're correct." [Trial Transcript, 907:18-908:22.]

worked between 35 and 40 hours. The overtime rate is then calculated at one and one-half times this regular rate of $5.93. Therefore, any hours over 40 worked in a workweek would be compensated at no less than $8.90 per hour ($5.93 x 1½ = $8.90). This calculation is clear from the clear language of the contract.

**B.     The Contract is Unambiguous and Plaintiffs Cannot Rely Upon Parole Evidence**

Plaintiffs must look beyond the contract to argue that they are entitled to a regular rate of $9.44 an hour and entitled to wages for hours worked between 22 and 35 hours in a workweek. Extrinsic evidence of the parties' intent, however, is relevant and admissible only when the terms of an agreement are ambiguous. *Lillibridge v. Mesa Petroleum Co.*, 907 F.2d 1031, 1037 (10th Cir. 1990) (citing to *Mays v. Middle Iowa Realty Corp.*, 202 Kan. 712, 452 P.2d 279, 284-85 (1969) (finding summary judgment for defendants appropriate despite plaintiff's claims that contract was ambiguous and that oral evidence of parties' intent should have been allowed)). The contract in this case is unambiguous and clear on its face and Plaintiffs' oral evidence is not admissible.

Plaintiffs' claim that the contract was ambiguous is in complete contradiction to their claim that the contract was breached. Plaintiffs argue that it was ambiguous as to the fixed number of hours the salary wage was intended to compensate. Plaintiffs allege the following Contract language was ambiguous:

> In performance of the duties herein described, Employees shall not work more than a combined total of 70 hours per week. Employees shall work approximately 44 hours per week but may be called upon to work additional hours as needed.

Ignoring the plain language of the contract, Plaintiffs argue that the "ambiguity" could have been remedied if the employees were "agreeing to work between 22 and 35 hours a week." [Plaintiffs Findings of Fact and Conclusions of Law, Revised October 24, 2005, ¶ 47.]

"The primary rule when interpreting a written contract is to ascertain the intent of the parties." *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998). "An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided." *Saathoff v. Data Systems Intern., Inc.*, 83 P.3d 1270, 2004 WL 292103, **3 (Kan. App.) (Kan. App. 2004) (citing *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10-11, 13 P.3d 351 (2000)).

The quoted language is not ambiguous. It is a single paragraph within the Contract. The first sentence refers to an allowable "combined total" number of 70 hours the two plaintiffs could work; plaintiffs do not allege the first sentence is ambiguous. Plaintiffs allege the second sentence – "Employees shall work approximately 44 hours per week" – is ambiguous because it is allegedly unclear whether Landvest expected each employee to work 44 hours or 22 hours per week. If Landvest required each of the plaintiffs to work 44 hours per week, the plaintiffs' "combined total" would be 88 hours. Eighty-eight hours exceeds 70 hours – the Contract would contradict itself within the short span of consecutive sentences. There is no ambiguity where, of two possible contractual interpretations, one results in absurdity and one does not. *See Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10-11, 13 P.3d 351 (2000).

Schneider and Wymer agreed to a salary wage for a fixed workweek for 22 hours minimum and 35 hours maximum per workweek. [Defendants' Second Findings of Fact and Conclusions of Law, filed October 24, 2005, ¶¶ 39-41.] Schneider and Wymer now seek to ignore any reference to the salary compensating them for 35 hours of work per week, arguing that they understood they were being paid for only 22 hours of work per week. Plaintiffs'

testimony of their subjective belief and understanding of the terms of the contract does not create an ambiguity in the written agreement. The Court cannot reform contracts to match one party's intent. *Tri-State Commodities, Inc. v. GSO America, Inc.*, 18 Fed. Appx. 737, 742, 2001 WL 1012159, *4 (10th Cir. 2001). Accordingly, when viewing from the agreement between the parties within the four corners of the contract, the only interpretation is a fixed workweek salary pay plan for 35 hours per week. [Def. Trial Ex. A0005.]

**C.   Plaintiffs Are Not Entitled to the Value of Lodging in the Inclusion of the Regular Rate**

In support of their claim that the value of lodging should be included in the calculation of overtime, Plaintiffs argue that the "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee" excluding seven specific types of payments – which does not refer to the exclusion of lodging. [Doc. 140, p. 3, ¶ 1 (citing to 29 U.S.C.A. § 207(e) 1-7.] Plaintiffs, however, ignore that the computation of the regular rate shall only include those "facilities" that are included in the calculation of an employee's wages, and thus excludes the value of lodging where it is primarily for the benefit of the employer. 29 C.F.R. §§ 531.32 and 531.30.

As pointed out in Defendants' most recent Proposed Findings of Fact and Conclusions of Law, 29 C.F.R. 531.3(a) dictates that "facilities" primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages. By regulation, "facilities" clearly includes lodging. 29 C.F.R. §§ 531.32 and 5310.30. Plaintiffs do not dispute that the lodging provided to Plaintiffs in this case was to the benefit and convenience of Landvest. Accordingly, the value of Plaintiffs' lodging should not be included in the calculation of Plaintiffs' regular rate of pay.

Without the inclusion of the value of lodging in Plaintiff's regular rate, Plaintiffs' regular hourly rate was $5.93 and their overtime rate was $8.90 an hour.[2]

## CALCULATION OF WAGES OWED

Plaintiffs bear the burden of proving by a preponderance of the evidence that they performed work; that the employer knew or should have known the work was performed; and that they were not properly compensated, through "sufficient evidence . . . as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 6 WH Cases 83 (1946). The burden of production does not shift to the employer unless the claimant first establishes a *prima facie* violation of the FLSA. *Id.*; *Bowe v. SMC Electrical Products, Inc.*, 916 F. Supp. 1066 (D. Colo. 1996). Once the burden shifts to the employer, the employer must come forward with evidence of precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.*

**A.   Plaintiffs Have Not Established Sufficient Evidence to Show the Amount and Extent of Work as a Matter of Just and Reasonable Inference**

For the first time in this case, Plaintiffs have itemized their alleged uncompensated non-overtime and overtime hours on a weekly basis. [Doc. 140, p. 5.] Not surprisingly, Plaintiffs have wavered at every stage in calculating their unpaid wages and provided a different amount of compensation owed, with no explanation, at every opportunity. In doing so, Plaintiffs have not met their burden of showing the amount and extent of work performed as a matter of just and reasonable inference.

Plaintiff Schneider claimed she worked, but was not paid for, a total of <u>1,092.50</u> non-overtime hours in her complaint to the Colorado Department of Labor; <u>954</u> non-overtime hours

---

[2] Without the inclusion of lodging, Plaintiffs' calculated regular rate of $9.44 produces an overtime rate of $14.16 an hour.

in their Rule 26 disclosures produced in this lawsuit; <u>900</u> non-overtime hours at trial, and, today, <u>936</u> non-overtime hours in Plaintiffs Brief Re: Calculation of Damages. [*See* Doc. #133: Defs. October 24, 2005 Findings of Fact and Conclusions of Law, ¶¶ 111, 115; Trial Transcript 117:25-118:10; 118:18-119:1[3]; Doc. # 140.]  Similarly, Plaintiff Wymer claimed he worked, but was not paid for, <u>1,057</u> non-overtime hours in his complaint to the Colorado Department of Labor; <u>954</u> non-overtime hours in his supplemental Rule 26 Disclosures; <u>900</u> non-overtime hours at trial, and, today, <u>936</u> non-overtime hours in Plaintiffs Brief Re: Calculation of Damages. [*See* Doc. #133: Defs October 24, 2005 Findings of Fact and Conclusions of Law, ¶¶ 111, 115; Trial Transcript 299:18-21, 300:14-19; Doc. #140.]  Unexplainably, but most likely for lack of evidence to the contrary, Plaintiffs have modified their claim for payment of non-overtime wages downward.

In contrast, Plaintiffs have continuously modified their claim for unpaid overtime hours *upward* by over 100% from their original claim to the Department of Labor. Schneider claimed in her complaint to the Department of Labor that she was owed <u>24.75 overtime hours</u>. After filing this lawsuit, she claimed in her Rule 26 Disclosures that she worked, but was not paid for, <u>229.50 overtime hours</u>; at trial claimed she worked <u>250 overtime hours</u>[4]; and, today, claims she worked <u>351 overtime hours</u>. [*See* Doc. #133: Defs October 24, 2005 Findings of Fact and Conclusions of Law, ¶¶ 111, 115; Trial Transcript 299:18-21, 300:14-19; Doc. #140.]

Wymer claimed in his complaint to the Department of Labor that he was owed <u>12 overtime hours</u>. After filing this lawsuit, he claimed in his Rule 26 Disclosures that he worked,

---

[3] Plaintiffs testified that they each worked 40 or more hours per week every week of their employment except for the first and last week. The total number of workweeks, minus the first and last workweek, is 50. Eighteen non-overtime hours per week for 50 weeks equates to 900 non-overtime hours.

[4] Plaintiff Schneider testified that from the beginning of her employment until November 10, 2002, she worked 45 to 50 hours per week; from November 11, 2002 through April 3, 2003 she worked 45 to 55 hours. Leaving off the first and last weeks because Plaintiff Schneider admitted she did not work overtime those two weeks, her testimony was that she worked "a minimum" of 250 overtime hours during her employment. [Trial Transcript 117:16-118:10; 118:18-119:1.]

but was not paid for, <u>92 overtime hours</u>; he claimed at trial claimed he worked "between" <u>no overtime hours</u> to as many as <u>750 overtime hours</u>[5]; and, today, claims he worked <s><u>351 overtime</u></s> <u>225 overtime hours</u>. [*See* Doc. #133: Defs October 24, 2005 Findings of Fact and Conclusions of Law, ¶¶ 111, 115; Trial Transcript 299:18-21, 300:14-19; Doc. #140.]

As these comparisons show, Plaintiffs have never provided a consistent calculation of the hours worked but not compensated. Neither Plaintiffs' claim of hours worked have ever coincided with their timesheets. In fact, the only consistent claim of hours worked by Plaintiff Schneider was those represented on her timesheets and those reported to the Social Security Administration. [Trial Transcript 228:12-229:8.] Even Plaintiffs' Brief Re: Calculation of Damages is void of any citation to the record of Plaintiffs' testimony or any other evidence regarding the number of hours allegedly worked. Plaintiffs have not met their burden in establishing, even as a reasonable approximation, the amount and extent of work performed as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 6 WH Cases 83 (1946).

**B.   Landvest Has Provided Evidence of Precise Amount of Work Performed and with Evidence to Negate the Reasonableness of the Inference to be Drawn from Plaintiffs Evidence**

Even assuming Plaintiffs have met their burden, Defendants provided the court with conclusive evidence of the precise amount of work performed. Further, the Defendants negated the reasonableness of any inference drawn from Plaintiffs' evidence. Six witnesses testified that they did the job within the regular time allotted. [Defendants' Findings of Fact and Conclusions

---

[5] Plaintiff Schneider testified that from the beginning of her employment until November 10, 2002, she worked 45 to 50 hours per week; from November 11, 2002 through April 3, 2003 she worked 45 to 55 hours. Leaving off the first and last weeks because Plaintiff Schneider admitted she did not work overtime those two weeks, her testimony was that she worked "a minimum" of 250 overtime hours during her employment. [Trial Transcript 117:16-118:10; 118:18-119:1.]

of Law filed October 27, 2005, paragraphs 11-23.] The testimony from other resident managers who performed the same responsibilities, and at least one who worked at the same job site, was conclusive that it did not take anywhere close to the 45 to 49 hours per week *for each manager*, as Plaintiffs are now claiming.

**C.     Plaintiffs' Calculation Ignores Compensation Received for Work Performed at a Premium Rate of $14.16 an Hour**

In calculating for the Court Plaintiffs' damages, Plaintiffs' counsel conveniently ignores the hours represented by Schneider and Wymer in their timesheets, ignores the amount of wages paid to Schneider and Wymer during their employment and merely "estimates" the amount Schneider and Wymer are now owed based on an average of hours without credit for wages paid.

Summarized from Defendants' Findings of Fact and Conclusions of Law, Plaintiff Schneider received a total of $\underline{\$1239.00}$ in premium pay at a rate of $14.16 an hour *in addition to* her regular salary for the following weeks during her employment:

| CHARLOTTE SCHNEIDER | | |
|---|---|---|
| Week No. / Ending Date | Premium Pay | Hours |
| 4 – May 5, 2002[6] | $283.20 | 20 |
| 5 – May 12, 2002[7] | $56.64 | 4 |
| 6 – May 19, 2002[8] | $84.96 | 6 |
| 8 – June 2, 2002[9] | $99.12 | 7 |
| 12 – June 30, 2002[10] | $56.64 | 4 |
| 13 – July 7, 2002[11] | $134.52 | 9.5 |
| 20 – August 25, 2002[12] | $56.64 | 4 |
| 21 – September 1, 2002[13] | $56.64 | 4 |
| 22 – September 8, 2002[14] | $28.32 | 2 |
| 23 – September 15, 2002[15] | $184.08 | 13 |
| 27 – October 13, 2002[16] | $28.32 | 2 |

| | | |
|---|---|---|
| 33 – November 24, 2002[17] | $14.16 | 1 |
| 36 – December 15, 2002[18] | $56.64 | 4 |
| 39 – January 5, 2003[19] | $56.64 | 4 |
| P41 – January 19, 2003[20] | $14.16 | 1 |
| 50 – March 23, 2003[21] | $28.32 | 2 |
| **TOTALS** | **$1,239.00** | **87.5** |

Plaintiff Wymer received a total of $495.60 in premium pay at a rate of $14.16 an hour *in addition to* his regular salary for the following weeks during his employment:

| Week No. / Ending Date | Premium Pay | Hours |
|---|---|---|
| 4 – May 5, 2002[22] | $56.64 | 4 |
| 5 – May 12, 2002[23] | $56.64 | 4 |
| 6 – May 19, 2002[24] | $28.32 | 2 |
| 12 – June 30, 2002[25] | $56.64 | 4 |
| 20 – August 25, 2002[26] | $56.64 | 4 |
| 21 – September 1, 2002[27] | $56.64 | 4 |
| 22 – September 8, 2002[28] | $28.32 | 2 |
| 27 – October 13, 2002[29] | $28.32 | 2 |
| 36 – December 15, 2002[30] | $56.64 | 4 |
| 39 – January 5, 2003[31] | $28.32 | 2 |
| 41 – January 19, 2003[32] | $14.16 | 1 |
| 50 – March 23, 2003[33] | $28.32 | 2 |
| **TOTALS** | **$495.60** | **35** |

Out of the 52 weeks worked, Plaintiff Schneider was paid additional compensation in 14 of those weeks at a premium rate above the overtime rate owed at $14.16 per hour, for a total of $1,239.00. Landvest paid Wymer additional compensation in 12 of those weeks at a premium rate of $14.16 per hour, for a total of $495.60. Plaintiffs do not offset their wage claim based on the payment of these additional hours at a generous premium rate of $14.16 an hour – almost two

and one-half times their regular hourly rate of $5.93 an hour. Accordingly, any damage award for unpaid wages should be offset by $1,239 for Plaintiff Schneider and $495.60 for Plaintiff Wymer.

**LIQUIDATED DAMAGES**

If an employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that it had reasonable grounds for believing that the act or omission was not a violation of the Fair Labor Standards Act, the court may award no liquidated damages. 29 U.S.C. § 260.

**A.    Defendants Acted in Good faith and Defendants Had Reasonable Grounds for Believing the Act or Omission Was Not a Violation of the FLSA**

In 1999, the U.S. Department of Labor refused to pursue a formal investigation after counsel for Defendants presented a clear explanation as to Defendant Landvest's wage practices for resident managers and indicated to Landvest's counsel that Landvest's pay practices were fine. [Trial Transcript 404:1-405:8; Def. Ex. 30.] At the time of Plaintiffs' employment, Defendants understood the Department's refusal to pursue an investigation as confirmation that their wage and hour practices were lawful under the Fair Labor Standards Act. *Id.*

Under these circumstances, Defendants acted in good faith and had reasonable grounds for believing the act or omission was not a violation of the FLSA. *See King v. Standard Advertising Corp.*, 116 F. Supp. 330 (W. Va. 1953) (denying liquidated damages and finding the good faith defense was met by the employer where the employer had conferred with officers of the Wage and Hour Division regarding its liabilities and the rights of its employees under the Fair Labor Standards Act, and the defendant's business was inspected by a Wage and Hour

inspector, and the correspondence between that office and the defendant revealed no objection to the defendant's interpretation of the Act).

### B. Defendants Sufficiently Plead the Good Faith Defense

Defendants' pled in their Answer to Plaintiffs' Amended Complaint, filed June 1, 2005, that Defendants did not "willfully" violate the Fair Labor Standards Act. [Doc. 50, ¶ 8.] Similarly, Defendants raised the same defense in the Pretrial Order filed on September 14, 2004, stating they did not willfully violate the Fair Labor Standards Act. [Doc. , p. 4, ¶ 6.]

A pleading of non-willful behavior is tantamount to a pleading of good faith. In fact, many courts have held as much in finding the good faith defense is synonymous to a willfulness standard. *See, e.g., Alicea v. Porto Rico Gas & Coke Co.*, 89 F. Supp. 938 (DC Puerto Rico 1950); *Foster v. Irwin*, 258 F. Supp. 709 (DC La 1966); *Clougherty v. James Vernor Co.*, 187 F.2d 288 (6th Cir. 1951), *cert den.* 342 US 814, 96 L Ed. 616, 72 S. Ct. 28; *Snelling v. O.K. Service Garage, Inc.*, 311 F. Supp. 842 (D. Kent. 1970). In such cases, the courts have required a showing of "bad faith, malice, oppression, or *willful* violation of the Fair Labor Standards Act on the part on the employer," before reputing the "good faith" of the employer and awarding liquidated damages. *Id.*

Defendants, in alleging that they did not willfully violate the FLSA, did so out of an abundance of caution to ensure that they preserved any defense that they not only acted in good faith, but they did not act with malice, oppression or willfulness in any alleged violation. Defendants' pleading of non-willfullness preserved Defendants' good faith defense.

### C. Plaintiffs are Not Prejudiced by Any Ambiguity in Defendants' Pleadings

Plaintiffs have been aware of Defendants' good faith defense from the outset of this case. In fact, Plaintiffs' counsel acknowledged Defendants' good faith defense as recently as August 4,

2004, in correspondence discussing Defendants' evidence from the U.S. Department of Labor. [*See* Def. Ex. A30 for the documents produced to Plaintiffs relating to the 1999 U.S. Department of Labor audit.] In arguing that the information should have been produced in Defendants' Rule 26 disclosures, Plaintiffs' counsel acknowledged that this information was relevant to Defendants' defense of "willfulness." *See* Plaintiffs' Trial Exhibit 70: August 11, 2004 letter from counsel for Defendants responding to Plaintiffs' counsel's letter.

Plaintiffs cannot now argue that they were not aware that Defendants were claiming that they acted in good faith or that the information that is relied upon by Defendants was in support of their good faith defense.

## CONCLUSION

Plaintiffs' calculation of damages is premised on a regular rate of $9.44 that is not set forth in the four corners of the Managers Employment Agreement. The contract is clear and unambiguous that Plaintiffs were being paid a salary wage for a fixed work of 35 hours a week, making Plaintiffs' regular rate $5.93 an hour. Plaintiffs are not entitled to the inclusion of lodging in their regular rate and, therefore, Plaintiffs' overtime rate, is $8.90 an hour.

Plaintiffs' have failed to produce any evidence in support of their calculation of damages itemized in Paragraphs 152 and 153 of their Proposed Findings of Fact submitted October 26, 2005. In fact, Plaintiffs have wavered at every stage in calculating their unpaid wages and have never provided the same calculation of number of hours worked or wages owed. In doing so, Plaintiffs have failed to establish sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference. Even assuming Plaintiffs have met their burden, Plaintiffs' damages must be offset by the total amount of premium pay paid to Plaintiffs *in addition* to their contracted salary wage.

Plaintiffs are not entitled to liquidated damages as Defendants have sufficiently plead, and proven, that they acted without willfulness and in good faith in compensating Plaintiffs for the hours that they worked. Defendants acted in good faith in relying upon the U.S. Department of Labor's refusal to pursue a claim for unpaid wages under the same wage plan.

KUTAK ROCK LLP

By:  /s/ Stacia G. Boden
      Alan L. Rupe,  KS Bar # 08914
      Stacia G. Boden,   KS Bar # 20295
      Kutak Rock LLP
      8301 East 21st Street North, Suite 370
      Wichita, Kansas  67206-2295
      Telephone:  (316) 609-7900
      Facsimile:  (316) 630-8021
      alan.rupe@kutakrock.com
      stacia.boden@kutakrock.com

      Heather M. Davis, #30056
      Mark C. Willis, #31025
      1801 California Street, Suite 3100
      Denver, Colorado 80202
      Telephone:  (303) 297-2400
      Facsimile:  (303) 292-7799
      heather.davis@kutakrock.com
      mark.willis@kutakrock.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2006, I electronically filed the foregoing **DEFENDANTS' DEFENDANTS' SUPPLEMENTAL BRIEF ON CALCULATION OF DAMAGES AND LIQUIDATED DAMAGES** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Donna Dell'Olio
Ian David Kalmanowitz
CORNISH AND DELL'OLIO
431 North Cascade Avenue, Suite 1
Colorado Springs, CO  80903
Phone:  (719) 475-1204
Facsimile:  (719) 475-1264
ddellolio@cornishanddellolio.com
ikalmanowitz@cornishanddellolio.com

Attorney for Plaintiffs

　　　　　　　　　　　　　　　　　　　　　　　　 /s/ Stacia G. Boden
　　　　　　　　　　　　　　　　　　　　　　　　Stacia G. Boden, KS #20295
　　　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendants
　　　　　　　　　　　　　　　　　　　　　　　　Kutak Rock LLP
　　　　　　　　　　　　　　　　　　　　　　　　8301 East 21st Street North, Suite 370
　　　　　　　　　　　　　　　　　　　　　　　　Wichita, Kansas  67206-2295
　　　　　　　　　　　　　　　　　　　　　　　　Telephone:  (316) 609-7900
　　　　　　　　　　　　　　　　　　　　　　　　Facsimile:   (316) 630-8021
　　　　　　　　　　　　　　　　　　　　　　　　stacia.boden@kutakrock.com